THE ILLINOIS STATE CHAMBER OF COMMERCE *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD, Respondent.

First District (4th Division)    Nos. 77-1176, 77-1385, 77-1440 cons.

Opinion filed December 14, 1978.

Richard J. Kissel and Jeffrey C. Fort, both of Martin, Craig, Chester & Sonnenschein, Harvey M. Sheldon, and Ronald Lipinski, all of Chicago (Plunkett, Nisen, Elliott & Meier, Ron Scherubel, Charles B. Gustafson, and Sheldon A. Zabel, of counsel), for petitioners.

William J. Scott, Attorney General, of Chicago (George William Wolff, Assistant Attorney General, of counsel), for respondent.

Mr. JUSTICE LINN delivered the opinion of the court:

This action involves three consolidated petitions for review filed pursuant to the Illinois Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1029 and 1041). Petitioners seek direct review of the validity of a July 7, 1977, order of the Illinois Pollution Control Board (Board) in docket R71-23, readopting regulations 203(g)(1) and 204(a) and (c)(1)(A) relating to air quality standards.

The Board first adopted rules 203(g)(1), particulate emissions standards, and 204(a) and (c)(1)(A), sulfur dioxide emissions standards, in 1972. The declared propriety of the Board's adoption of these rules was reversed and the cause remanded to the Board for further consideration in *Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, *aff'd in relevant part* (1976), 62 Ill. 2d 494, 343 N.E.2d 459. The principal issues presented for review in this case involve

the scope of that remanding order and its impact on the subsequent action taken by the Board with regard to regulations 203(g)(1) and 204(a) and (c)(1)(A).

The issues raised by the instant petitions for review were recently considered by the Illinois Appellate Court, Third District, in *Ashland Chemical Co. v. Pollution Control Board* (1978), 64 Ill. App. 3d 169, 381 N.E.2d 56, in which the court reviewed the same rulemaking proceeding now before us. The facts relevant to this action were adequately stated in the *Ashland Chemical* opinion and we find it unnecessary to recite them again in detail.

In reviewing the 1972 rulemaking proceeding leading to the initial adoption of rules 203(g)(1) and 204(a) and (c)(1)(A) the appellate court in *Commonwealth Edison* stated: "[P]ossibly scientific evidence may have been developed since the hearing and the resultant Board opinion in this cause that may not demand a relaxation of these challenged rules." (25 Ill. App. 3d 271, 288, 323 N.E.2d 84, 96.) The appellate court remanded the rules to the Board with instructions "either to validate [the rules] in accordance with section 27 of the Act or to prepare proper rules as substitutes." (25 Ill. App. 3d 271, 288, 323 N.E.2d 84, 96.) The supreme court affirmed the appellate court's decision to remand rules 203(g)(1) and 204(a) and (c)(1)(A) to the Board and declined "to determine the validity of [the rules] on the basis of evidence adduced at hearings held in 1970, 1971, and 1972 * * *." 62 Ill. 2d 494, 503, 343 N.E.2d 459, 465.

After remand in the spring of 1976, the Board consolidated the record in R71—23 (concerning the remanded rules) with other related proceedings in R74—2 and R75—5 then pending before the Board. A year later, the Board announced that it had received a report prepared by Marder and Associates in response to the supreme court's decision in *Commonwealth Edison* and that it would study the report to determine if it supported a "revalidation" of the remanded rules.

On May 12, 1977, the Board announced that it planned to readopt without change the same regulations previously held invalid in *Commonwealth Edison*. At that time a number of interested persons, including several of the petitioners herein, filed written comments objecting to the Board's readoption of the rules without first conducting hearings or preparing and considering an economic impact study. On July 7, 1977, without holding additional substantive or economic impact hearings, the Board issued an order which "validated" rules 203(g)(1) and 204(a) and (c)(1)(A). That order provided for a 45-day public comment period and stated that the regulations would become effective on September 1, 1977.

During the 45-day comment period which followed the July 7, 1977, order, petitioners and others objected to the Board's action. However, the

Board did not respond to the objections raised in the comments, and the regulations became effective on September 1, 1977, without further comment by the Board.

On August 10, 1977, petitioners, Illinois State Chamber of Commerce, City of Rochelle, Abbott Laboratories and Caterpillar Tractor Co., filed a petition for review in case No. 77-1176. On September 23, 1977, these same petitioners filed another petition for review designated case No. 77-1385. Petitioner, Village of Winnetka, filed a petition for review in case No. 77-1440 on October 5, 1977. All three petitions for review have been consolidated for consideration.

OPINION

I.

We must preliminarily address several issues raised by motion to dismiss the petitions for review. Since the filing of the petitions the respondent Board has filed motions to dismiss the petitions for review on three separate grounds.[1] These motions have been taken with the case for consideration. The Board claims the petitions should be dismissed for the following reasons: (1) the petitioners did not file timely petitions for review from the 1972 rulemaking proceeding; (2) the petitioners did not file timely petitions for review from the 1977 readoption order; and (3) petitioners failed to name all necessary parties as respondents.

The Board's first request for dismissal of the petitions is premised on the argument that by failing to file petitions for review within 35 days of the Board's original adoption of rules 203(g)(1) and 204(a) and (c)(1)(A) on April 13, 1972, petitioners waived any objection which they might have raised with regard to the validity of the rules. An identical issue was raised by motion to dismiss in the *Ashland Chemical* case. There the court held that since the rules in question had been found invalid in *Commonwealth Edison* and as a result of that decision the Board was required to take new action with regard to the rules, those persons who were adversely affected by the Board's new action in 1977 were entitled to review those actions by petition for review. (64 Ill. App. 3d 169, 173, 381 N.E.2d 56, 59.) We agree with the court in *Ashland Chemical* and refuse to dismiss the petitions for review on the basis that petitioners failed to seek review from the 1972 rulemaking proceeding.

An additional jurisdictional issue has arisen from our handling of the Board's motions based on the first theory of dismissal. On January 5, 1978, the Board moved to dismiss the petitions for review in cases 77-1385 and 77-1440 citing petitioners' failure to appeal from the 1972 rulemaking

---

[1] The Board also moved to dismiss the Illinois State Chamber of Commerce as a petitioner. This motion was denied and we do not reconsider it here.

proceeding. This motion was allowed on January 26, 1978. On February 21, 1978, the Board filed a similar motion to dismiss the petition for review in 77-1176. This motion was granted on March 3, 1978.

In the meantime, apparently confused by this court's granting of extensions of time to file briefs after the dismissal of the petitions in 77-1385 and 77-1440, petitioners, on March 1, 1978, filed two separate motions to reconsider the orders of dismissal. The motions seeking reconsideration were taken under advisement. While petitioners awaited a determination of their motions for reconsideration the petitioners in 77-1385 sought to protect their interests by filing a petition for leave to appeal to the Illinois Supreme Court from this court's order of dismissal.

We requested and heard oral argument on petitioners' motions to reconsider the orders of dismissal. After considering the arguments presented by counsel, we vacated our previous orders of dismissal and, on April 14, 1978, reinstated all the petitions for review. The supreme court thereafter dismissed the petition for leave to appeal in 77-1385.

The Board contends that this court lacked the jurisdiction to vacate the orders of dismissal. We do not agree.

■■ Power to vacate and set aside judgments is inherent in all courts of record including courts of appellate jurisdiction. (*Czyzewski v. Gleeson* (1977), 49 Ill. App. 3d 655, 364 N.E.2d 557.) A trial court usually loses jurisdiction of a final order entered upon the passing of 30 days. (*Pape v. Department of Revenue* (1968), 40 Ill. 2d 442, 240 N.E.2d 621.) However, within that 30-day period the court retains the inherent power to vacate any of its judgments upon the showing of good cause. *Trojan v. Marquette National Bank* (1967), 88 Ill. App. 2d 428, 232 N.E.2d 160.

■ A reviewing court, having obtained jurisdiction over a case, is not divested of jurisdiction until the parties' rights of appeal have been exhausted. As stated in *People v. McCloskey* (1971), 2 Ill. App. 3d 892, 270 N.E.2d 126, *supplemental opinion*, 2 Ill. App. 3d 897, 274 N.E.2d 358, *additional supplemental opinion*, 2 Ill. App. 3d 901, 276 N.E.2d 349:

"* * * [A] reviewing court in Illinois is divested of jurisdiction in a cause before it when its mandate issues to a lower court (thereby restoring jurisdiction in that court) or when a petition for leave to appeal from the appellate court to the Illinois Supreme Court has been allowed or when a petition for leave to appeal or *certiorari* to the United States Supreme Court has been granted (thereby passing jurisdiction to the higher court)." 2 Ill. App. 3d at 298, 274 N.E.2d at 360.

■■ When petitioners filed their motions to reconsider the orders of dismissal this court's mandate had not issued to the Board and the time for filing a petition for leave to appeal had not expired. Although a petition for leave to appeal was subsequently filed before this court entered an

order reinstating the petitions for review, the supreme court had not yet acted upon the petition for leave to appeal. In fact, when petitioners' motions for reconsideration were filed, this court had not yet dismissed the petition in 77-1176. For these reasons we conclude that we had jurisdiction to vacate the orders of dismissal and reinstate the petitions for review.

We note that the confusion generated by the various motions filed and orders entered in this cause is in part attributable to the manner in which the motions to dismiss were presented. Although action on the three petitions for review had been consolidated prior to the filing of the first motion, the Board did not address its objections to all of the petitions in one motion. Further, the Board's various motions to dismiss were filed piecemeal. We feel it is appropriate to comment that when reasonably possible all objections to the jurisdiction of the court should be raised in a single motion.

The second theory raised by the Board's motions to dismiss is that petitioners failed to file timely petitions for review from the 1977 readoption order. By statute, petitions to review orders of the Board must be filed "within thirty-five days after entry of the order or other final action complained of * * *." Ill. Rev. Stat. 1975, ch. 111½, par. 1041. The order from which petitioners seek review was issued by the Board on July 7, 1977, and stated that the revalidation of the rules was "subject to a public comment period to run for 45 days from the date of this Order." The order further stated: "Unless modified by Board Order, the validation of these rules shall become effective September 1, 1977."

By its own terms the July 7, 1977, order was not to become final and effective until September 1, 1977. The Board's establishment of a 45-day public comment period indicates that the order was not final on July 7, 1977, and that the administrative process had not been completed. The petitioners filed comments with the Board during the comment period and expected further action or a response from the Board. Since the Board failed to deny or otherwise respond to petitioners' request for rehearing contained in their comments, and the rules took effect on September 1, 1977, without further comment by the Board, the September 1, 1977, date must be considered the effective date of the order.

All petitioners filed petitions for review within 35 days of the September 1, 1977, effective date. The petitioners in No. 77-1176 mailed their petition to the clerk of the court on August 10, 1977, within 35 days of the July 7, 1977, order. However, the same petitioners also filed a petition for review (No. 77-1385) within 35 days of September 1, 1977. Thus, although the petition in No. 77-1176 was prematurely filed, this

court has acquired jurisdiction over the substance of the arguments raised in the early petition by virtue of the second and timely petition filed by the same petitioners.

■ Additionally, we note that a timely request for reconsideration of a Board order stays the time within which an appeal from that order may be taken. (*Clean Air Coordinating Committee v. Environmental Protection Agency* (1976), 42 Ill. App. 3d 124, 355 N.E.2d 573.) For these reasons the Board's motions based on its second theory of dismissal must also be denied.

■ The final issue raised by motion to dismiss is whether petitioners failed to join all necessary parties as respondents in their petitions to review the 1977 readoption order. Citing section 41 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1041), and Supreme Court Rule 335 (Ill. Rev. Stat. 1975, ch. 110A, pars. 335(a) and (b)), the Board contends that the petitions should be dismissed for failing to join and serve all individuals who participated in the rulemaking proceeding. In rejecting this same contention the court in *Ashland Chemical* stated "section 29 (Ill. Rev. Stat. 1975, ch. 111½, par. 1029) clearly recognizes that there are usually no parties at such a regulatory proceeding apart from the Pollution Control Board." (64 Ill. App. 3d 169, 174, 381 N.E.2d 56, 59-60.) The *Ashland Chemical* opinion also points out that a similar motion filed by the Pollution Control Board was denied by the Appellate Court, First District, in *Commonwealth Edison Co. v. Pollution Control Board* (Docket No. 77-1447). These precedents are controlling and the Board's motion to dismiss for failure to join and serve necessary parties must also be denied.

## II

We next consider petitioners' contention that in failing to hold hearings following the remand of the rules, the Board did not comply with the *Commonwealth Edison* mandate. We will consider the following three specific objections raised by petitioners: (1) the Board failed to conduct hearings on the feasibility of simultaneous compliance with rules 203(g)(1) and 204(a) and (c)(1)(A); (2) the Board failed to acquire and consider an economic impact study; and (3) the Board failed to provide petitioners with an opportunity to respond to the Marder report.

The Board contends that on remand it was only required to consider the "wealth of new information" referred to by the supreme court in *Commonwealth Edison* which had been compiled during the pendency of the appeals in that case. This requirement, the Board argues, was accomplished by incorporating the records in R74—2 and R75—5 into the record in R71—23. In light of this evidence the Board then chose to "validate" the rules previously found invalid.

The appellate court in *Commonwealth Edison* stated:

> "From our reading of the record, we are unable to state that the Board took into account technical feasibility of these rules. * * * Without any evidence that the needed systems are beyond the conceptually workable stage of development, it cannot be said that the Board's rules rest upon any evidence of statutory compliance." (25 Ill. App. 2d 271, 287-88, 323 N.E.2d 84, 95.)

In affirming the appellate court, the supreme court upheld the ruling that the evidence in the record at the time of the adoption of the rules in 1972 was insufficient to sustain them. Having been made aware of a "wealth of new information" the supreme court then declined to review the rules. These judicial actions leave no doubt that rules 203(g)(1) and 204(a) and (c)(1)(A) were found invalid in *Commonwealth Edison* and that the Board was required to find additional evidentiary support for the rules before readopting them or preparing proper rules as substitutes.

Section 28 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1028) provides: "No substantive regulation shall be adopted, amended, or repealed until after a public hearing within the area of the State concerned. In the case of state-wide regulations hearings shall be held in at least two areas." The Board's Procedural Rule 202 also requires that hearings be held before a substantive regulation is adopted. Here the Board was required to readopt rules, yet it failed to provide a public hearing at which interested persons could be heard.

It seems unreasonable to assume that in remanding the rules, the court in *Commonwealth Edison* expected the Board to limit their examination to information already existing at the time the sureme court rendered its opinion. If this were so, by the time the readopted rules again came under judicial review, as it was likely they would, more recent information would possibly be available necessitating yet another reconsideration of the rules.

The incorporation of the records in R74—2 and R75—5 into R71—23 does not appear to have satisfied the need for additional evidence. These proceedings neither dealt with particulate standards nor the relationship between particulate and sulfur emission control nor the feasibility of simultaneous compliance with rules 203(g)(1) and 204(a) and (c)(1)(A).

Finally, in *Ashland Chemical* the court found that the supreme court opinion in *Commonwealth Edison* required the Board to receive additional evidence concerning intermittent control systems. We agree that the mere melding of existing records without affording interested parties an opportunity to participate in additional public hearings is insufficient to comply with the directive of *Commonwealth Edison*.

■ We believe the issue of the need to consider an economic impact study was properly resolved by the court in *Ashland Chemical*. There the court stated:

"[T]he language of the appellate court indicates that either the regulations be validated or changed. This language contemplates amendments as an alternative to validation. Since the supreme court was unwilling to consider the validity of the regulations without reference to subsequent developments, it seems to us consistent to this approach that the more specific requirements concerning economic impact prescribed by the 1975 amendments were of substantial significance. Consequently, an opportunity to have a study prepared, presented and considered should have been afforded. We find nothing in the record to support the respondent's suggestion that the failure of the Board to consider an economic impact study was the result of any omission of the petitioner." (64 Ill. App. 3d 169, 175-76, 381 N.E.2d 56, 61.)

It is our opinion that the Board was required to follow the procedural rules in effect at the time the regulations were readopted including the statutory requirement of obtaining and considering an economic impact study (Ill. Rev. Stat. 1975, ch. 111½, pars. 1006 and 1027(b)).

Lastly, we address petitioners' contention that they were not afforded an opportunity to respond to the substance of the Marder Report. Again we adopt the reasoning of the court in *Ashland Chemical* and agree that it was improper for the Board to consider the Marder Report without providing interested persons an opportunity to present opposing views. 64 Ill. App. 3d 169, 175, 381 N.E.2d 56, 61.

For these reasons we join the court in *Ashland Chemical* in vacating the Board's readoption of rules 203(g)(1) and 204(a) and (c)(1)(A) and remanding the cause to the Board for further proceedings consistent with this opinion. In light of our decision it is unnecessary for us to discuss the substantive validity of these regulations.

Regulations vacated and remanded.

JOHNSON, P. J., and ROMITI, J., concur.